**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

WAYNE WILLIAMS,                    *
                                   *
        Plaintiff,                 *
                                   *
vs.                                * CIVIL ACTION NO.2:12-0258-KD-B
                                   *
                                   *
AETNA LIFE INSURANCE CO.,          *
                                   *
        Defendant.                 *

## <u>REPORT AND RECOMMENDATION</u>

This case is before the Court on Defendant Aetna Life Insurance Company's Motion to Dismiss (Doc. 5), and Plaintiff Wayne Williams' Motion to Remand (Doc. 7). The motions have been referred to the undersigned Magistrate Judge for entry of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). On October 29, 2012, counsel for the parties and the United States presented oral arguments to the Court. The motions have been fully briefed and argued, and are now ripe for resolution. Upon consideration of the motions, briefs, and pleadings filed in this matter, and the arguments of counsel, the undersigned RECOMMENDS that Defendant's Motion to Dismiss (Doc. 5) be **GRANTED** in part and **DENIED** in part, and that Plaintiff's Motion to Remand (Doc. 7) be **DENIED.**[1]

---

[1] Also pending before the Court are the parties' respective motions seeking leave to supplement the record. (Docs. 27, 28).

**I. Background Facts**

On March 15, 2012, Plaintiff Wayne Williams commenced this action against Aetna Life Insurance Company ("Aetna") in the Circuit Court of Marengo County, Alabama (Doc. 1-2). According to Plaintiff, he was formerly employed by the Army and Air Force Exchange Service[2] ("AAFES"), and was insured under a disability insurance plan provided by his employer and administered by Aetna.[3] (Id. at 3). Plaintiff avers that he became physically disabled and filed a claim with Aetna for disability benefits. Plaintiff's claim was initially approved and he received monthly disability benefits in the amount of $407.98 from May 29, 2010 through April 11, 2011. (Id. at 4). At that point, Aetna discontinued Plaintiff's disability benefits, and he appealed the decision to terminate his disability benefits. (Id.). Plaintiff's appeal was handled by Renee Figge, AAFES's Chief Financial Officer. (Doc. 2-1 at 2-3). Ms. Figge upheld the

Both motions are granted.

[2] AAFES is a joint command of the United States Army and the United States Air Force and a non-appropriated fund instrumentality of the Department of Defense. Its dual missions are to provide quality merchandise and services of necessity and convenience to authorized customers (primarily military personnel) at uniform low prices, and to generate reasonable earnings to supplement appropriated funds for the support of U.S. Army and Air Force Morale, Welfare, and Recreation programs. AAFES is headquartered in Dallas County, Texas. (Doc. 2-1 at 1).

[3] AAFES employees are federal employees of the United States within the Department of Defense. (Id. at 3).

decision to terminate Plaintiff's benefits. (Id.).

In his Complaint, Plaintiff alleges that he was a beneficiary under his employer's disability plan, and that Aetna breached the parties' disability contract by wrongfully discontinuing his disability benefits. (Doc. 1-2 at 5). Plaintiff also alleges that Aetna acted without just cause and in bad faith when it failed and wrongfully refused to pay his disability benefits in violation of Alabama Code § 27-12-24 (1975). (Id.).

On April 18, 2012, Aetna filed a Notice of Removal pursuant to 28 U.S.C. §§ 1441 and 1442 (2) and removed the case to this Court. (Doc. 1). In the Notice, Aetna asserts that it provides disability certifications and clinical management for AAFES's disability plan, that it acted at the discretion of the United States and officers and agencies in handling the claim, and that as a result, removal jurisdiction exists under 28 U.S.C. § 1442(a).

On April 19, 2012, the United States filed a Joinder in the Notice of Removal [4]. (Doc. 2). In a Joinder Notice, the Government asserts that removal is proper under 28 U.S.C. §§ 1441 and 1442(a), the Federal Officer Removal statute, because the "Plaintiff in this action seeks relief against a person,

---

[4] Although the United States filed a Joinder Notice, and was represented by counsel at the hearing, it has not filed a Motion to Intervene.

[Aetna], acting under an officer of the United States." (Id. at 2).  Specifically, the Government asserts that Aetna is the initial claims administrator for AAFES' disability claims, that the appeal of a denial decision must be submitted to and handled by AAFES, and that because Aetna acts at the discretion of the United States, jurisdiction exists under the Federal Officer Removal statute[5].

On May 16, 2012, Aetna filed a Motion to Dismiss Plaintiff's Complaint. (Doc. 5).  Aetna argues that Plaintiff's breach of contract claim must fail because there is no contract between Plaintiff and Aetna, and that his bad faith claim must fail because there is no insurance contract between the parties. (Id.).  In response, Plaintiff, on May 17, 2012, filed a Motion to Remand this action to state court. (Doc. 7).  Plaintiff argues that this action was improperly removed and is not within the jurisdiction of the Court. (Id.).  Plaintiff also contends that "Aetna has not carried its burden to prove that Aetna is a federal officer having "direct and detailed control" over the Plan." (Doc. 8 at 5).  Alternatively, Plaintiff argues that he is entitled to jurisdictional discovery regarding the Trust, through which the Plan is established. (Id. at 8).  According to

---

[5]  The Government's Joinder Notice was accompanied by the sworn Affidavit of Brian R. Ross, Director of Benefits for AAFES. (Doc. 2-1).

Plaintiff, because the Trust is identified as the entity that may assert authority over the Plaintiff's disability Plan, jurisdictional discovery is proper to determine whether any "Trustee for the plan was involved in the claim," and whether the Government "exercise[s] control over Aetna," or "simply reviews Aetna's claim decisions." (Id. at 7).

In opposition to Plaintiff's Motion to Remand, Aetna argues that this case qualifies for removal under 28 U.S.C. § 1442 because it has two "colorable federal defenses," namely, federal immunity and the Government Contractor's Defense. (Doc. 15 at 10-11). Because the Motion to Remand raises the threshold issue of whether this Court has jurisdiction, the Court will turn first to that issue.

## II.  Analysis

### A.   Motion to Remand

Federal courts are courts of limited jurisdiction. See 28 U.S.C. § 1441(a).  A removing defendant must establish the propriety of removal under 28 U.S.C. § 1441 and, therefore, must establish the existence of federal jurisdiction. See Friedman v. New York Life Ins. Co., 410 F.3d 1350, 1353 (11th Cir. 2005) ("[I]n removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists.") (citation omitted).

In the instant case, Defendant seeks removal of this case under 28 U.S.C. §§ 1441 and 1442(a).  Section 1442(a) provides in pertinent part:

> a)   A   civil   action   or   criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1)  The  United  States  or  any  agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under  any  Act  of  Congress  for  the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1) (West, 2011).

Ordinarily, to remove a case based on federal question jurisdiction, the federal question must appear on the face of the well-pleaded complaint; an anticipated or actual federal defense does not satisfy the federal question removal requirement. Jefferson County v. Acker, 527 U.S. 423, 430-31, 119 S.Ct. 2069 (1999) (citing Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Further, a case can generally be removed to federal court only where a federal court would have had original jurisdiction over the case.   However, suits against federal officers are an

exception to the general rule. See 28 U.S.C. § 1442(a). Under the federal officer removal statute, suits against federal officers may be removed despite the non-federal cast of the complaint; the federal question element is met if the defense depends on federal law. Jefferson County, 527 U.S. at 430-31.

Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes are to be construed narrowly, with all doubts resolved in favor of remand. See University of S. Ala. v. American Tobacco Co., 168 F.3d 405, 411 (llth Cir. 1999); see also Russell Corp. v. American Home Assur. Co., 264 F.3d 1040, 1050 (11th Cir. 2001). ("[T]here is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand."). However, "in construing the colorable federal defense requirement, [the Court] ha[s] rejected a 'narrow, grudging interpretation' of the statute, recognizing that 'one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court.'" Jefferson County, 527 U.S. at 431 (citing Willingham v. Morgan, 395 U.S. 402, 407, 89 S.Ct. 1813 (1969). Section 1442 addresses the policy concern that "[i]f the federal government cannot guarantee its agents access to a federal forum if they are sued or prosecuted, it may have difficulty finding anyone willing to act on its behalf." Morgan

7

v. Bill Vann Co., C.A. 11-00535-WS-B, 2011 U.S. Dist. LEXIS 140394, *9-10 (S.D. Ala. Dec. 6, 2011) (citing Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1253 (9th Cir. 2006)); Corley v. Long-Lewis, Inc., 688 F.Supp.2d 1315, 1332 (N.D. Ala. 2010) ("The purpose of § 1442(a)(1) is to permit the removal of those actions commenced in state court that expose a federal official to potential civil liability or criminal penalty for an act performed...under color of office.") (citation and internal quotation marks omitted).

In order to remove a case under § 1442(a)(1), a defendant must show that "(1) it is a 'person' within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct 'acting under' a federal office; (3) it raises a colorable federal defense; and (4) there is a causal nexus between the claim and the conduct performed under the color of a federal office." Morgan, 2011 U.S. LEXIS 140394 at *10-11 (citing Feidt v. Owens Corning Fiberglas Corp., 153 F.3d 124, 135 (1998)). If a defendant establishes these elements, "the Court must broadly construe defendant's ability to remove under Section 1442(a)(1) to avoid frustrating its policy objective of having the validly of the defense of official immunity tried in a federal court by applying a narrow, grudging interpretation." McGee v. Arkel Int'l, LLC, 716 F.Supp.2d 572, 578 (S.D. Tex. 2009). The Court proceeds in recognition of this

principle.

### 1. Propriety of Removal Under § 1442(a)(1).

As discussed supra, Aetna argues that it is entitled to remove this action pursuant to the federal officer removal statute because, for purposes of the statute, Aetna is a "person"[6] who was "acting under" a federal officer, it has raised a colorable federal defense, and that there is a causal nexus between Plaintiff's claims and the conduct performed under the color of federal office.[7]   In opposing removal, Plaintiff

---

[6] In his filings, Plaintiff does not dispute Defendant's ability to satisfy the "person prong" or its ability to establish that there is a casual connection between Plaintiff's claims and the actions undertaken by Aetna. (Docs. 7, 15). Indeed, the record reflects that as a government contractor who serves as a claims administrator of the disability plan, Atena is a "person" within the meaning of § 1442(a)(1). See Bennett v. MIS Corp., 607 F.3d 1076, 1085 (6th Cir. 2010) (explaining that plain language of § 1442 does not exclude corporations and deeming interpretation of "person" to include corporations as being consistent with the statutory scheme); Isaacson v. Dow Chem. Co., 517 F.3d 129, 136 (2nd Cir. 2008) (opining that the term "person" in § 1442(a)(1) includes corporate persons); In re Asbestos, 661 F.Supp.2d 451, 454 (D. Del. 2009) ("defendants, as corporations, are 'persons' within the meaning of the statute"); Holdren v. Buffalo Pumps, Inc., 614 F.Supp.2d 129, 142 (D. Mass. 2009) (collecting authority and stating that "government contractors are entitled to seek removal under" § 1442(a)(1)); Pantalone v. Aurora Pump Co., 576 F.Supp.2d 325, 329 (D. Conn. 2008) (recognizing that § 1442(a)(1) removal privilege "extends to persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed") (citation and internal quotation marks omitted).

[7] The record also establishes a causal connection between Plaintiff's claim and Aetna's action.   As noted, Plaintiff

challenges Aetna's ability to demonstrate that it was "acting under" a federal officer, and that it has a colorable defense. (Docs. 7, ¶ 2, 26).

a.   **Whether Aetna was "Acting Under" a Federal Officer?**

The "acting under" element boils down to the key questions of whether the defendant was "acting under" the direction of a federal officer and, if they were, whether those actions were causally connected to the plaintiff's claims. See In re Methyl Tertiary Burtyl Ether ("MTBE) Prods. Liab. Litig., 488 F.3d 112, 124 (2nd Cir. 2007) (These inquiries "tend to collapse into a single requirement: that 'the acts that form the basis for the state civil or criminal suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations.'"). In other words, the defendant must show that they were doing more than merely acting under the "general auspices" of a federal officer or in a regulated industry, and must show that the actions for which they are now being sued were taken under direct and detailed federal control. Id., at 125; see also Swanstrom v. Teledyne Continental Motors, 531 F.

---

alleges that Aetna breached its administrative contract, and Aetna in turn asserts that its actions were taken at the direction of a federal officer, namely Ms. Figge, the AAFES Chief Financial Officer and Plan Trustee, who reviewed and denied Plaintiff's appeal. (Doc. 2-1).

Supp. 2d 1325 (S. D. Ala. January 9, 2008)("{M}ere participation in a regulated industry is insufficient to support removal unless the challenged conduct is closely linked to detailed and specific regulations")(citations omitted).

In the instant case, the record reflects that Aetna and AFFES entered into an administrative contract pursuant to which Aetna was to provide certain disability certification and clinical management services for AFFES employees. (Doc. 1-1). In conjunction with the administrative contract, a Trust was established for the payment of disability claims, and AAFES's Chief Financial Officer, Ms. Rene Figge, serves as one of the Plan Trustees. (Doc. 25).[8]  The agreement also provides, in pertinent part, that:

> (A).  Agency Relationship-Aetna, in performing its obligations under this Contract, is acting only as agent of the Contractholder and the rights and responsibilities of the parties shall be determined in accordance with the law of agency, except as otherwise herein provided.
>
> The Contractholder hereby delegates to Aetna authority to make initial determinations on behalf of the Contractholder with respect to disability certifications under the Plan and to determine and secure interventions deemed necessary by Aetna medical personnel to return a claimant to work as soon as possible considering his/her medical condition.  Also

---

[8]  Pursuant to Plaintiff's request for jurisdictional discovery, the Government responded to Plaintiff's Interrogatory and provided information about the Trust, including the identities of the persons serving as trustees for the disability trust. (Doc. 25).

> the Contractholder hereby delegates to Aetna
> authority to make initial determinations on
> behalf of the Conractholder with respect to
> disability benefit payments under the Plan and
> to pay such benefits, *subject however, to a*
> *right to the Contractholder to review and*
> *modify any such determination.*

(Doc. 1-1 at 7)(emphasis added).

Aetna has presented documentation reflecting that while it made the initial determination to cease paying disability benefits to Plaintiff, on appeal, AAFEE's Chief Financial Officer, Ms. Renee Figge exercised final authority and upheld the determination. (Doc. 2- 1 at ¶ 6). While Plaintiff questions whether Ms. Figge conducted a thorough analysis of his appeal, the record establishes that in contracting with Aetna, AAFEE reserved the discretion to modify Aetna's claims decision, and in this instance, through its Chief Financial Officer, AAFEE exercised its discretion in reviewing Plaintiff's appeal and affirming Aetna's initial determination that benefits should be discontinued. Thus, in discontinuing Plaintiff's benefits, Aetna was acting at the direction of a federal officer, namely Ms. Figge, who upheld Aetna's determination. Accordingly, Aetna has adequately established that its "actions" were "taken under the direction of a federal officer," inasmuch as Aetna complied with Ms. Figge's decision to deny Plaintiff's appeal of the cessation of his benefits. See Jacks v. Meridian Resource Company, 2012 U.S. App. LEXIS 25652 (8th Cir. December 17,

2012)("As a private contractor, [Blue Cross Blue Shield of Kansas City] is helping the government to produce an item that it needs- -the basic governmental function of providing health benefits for its employees. . . .and [in doing so, is] conduct[ing] business under the delegation of the government.")

### b. Whether Aetna Has Presented a "Colorable" Federal Defense?

As discussed <u>supra</u>, Aetna must also make a showing of a "colorable federal defense" in order to remove this action under § 1442(a)(1). <u>See</u>, <u>e.g.</u>, <u>Mesa v. California</u>, 489 U.S. 121, 129, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989) ("we have not departed from the requirement that federal officer removal must be predicated on the allegation of a colorable federal defense").  Courts have recognized that in applying this requirement, an "officer need not win his case before he can have it removed." <u>Willingham v. Morgan</u>, 395 U.S. 402, 407, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969). "Th[e] defense need only be plausible; its ultimate validity is not to be determined at the time of removal." <u>Magnin v. Teledyne Continental Motors</u>, 91 F.3d 1424, 1427 (11th Cir. 1996); <u>see also</u> <u>Hagen v. Benjamin Foster, Co.</u>, 739 F.Supp.2d 770, 781 (E.D. Pa. 2010) (recognizing "the Supreme Court's clear teaching that a colorable defense need not be proven at this stage of litigation due to the broad removal right the statute creates").

Although courts have couched the quantum of proof necessary

to establish a "colorable federal defense" differently, they have overwhelmingly framed it as a modest burden for removing defendants. See Id., 739 F.Supp.2d at 783 ("[T]he Court concludes that a defense is colorable for purposes of determining jurisdiction under Section 1442(a)(1) if the defendant asserting it identifies facts which, viewed in the light most favorable to the defendant, would establish a complete defense at trial."); Corley v. Long-Lewis, Inc., 688 F.Supp.2d 1315 (N.D. Ala. 2010) (to satisfy "colorable defense" requirement, "[a]ll a removing defendant needs to do is make a showing that his federal defense is not without foundation and made in good faith." (citation and internal quotations omitted); McGee v. Arkel Int'l, LLC., 716 F.Supp.2d 572, 578 (S.D. Tex. 2009) (to satisfy this prong, the removing defendant "need not prove the asserted defense, but need only articulate its 'colorable' applicability to the plaintiff's claims").

In this case, Aetna asserts that based upon its contractual relationship with AAFES, it has two colorable federal defenses: (1) it is entitled to sovereign federal immunity from suit and (2) it is entitled to Government Contractor Defense immunity[9]. (Doc. 15, pgs. 10-11).  According

---

[9]  Typically, the Government Contractor Defense provides immunity for government contractors in design defect cases where "(1) The United States approved reasonably precise specifications; (2) the equipment conformed to those

to Aetna, it is entitled to sovereign immunity because a judgment against it would expose the United States to liability due to the fact that in administering Plaintiff's disability claim, Aetna was acting as an agent for the Government, and under their administrative agreement, Aetna would be entitled to indemnification from the Government for any award to Plaintiff. Aetna also contends that as a government contractor, it is entitled to immunity under the government contractor's defense. Plaintiff, on the other hand, argues that because a trust was created to fund the disability plan, Aetna is not entitled to sovereign immunity because benefits are not paid out of the Federal treasury.

At this juncture, the Court need not determine whether Aetna can successfully establish these federal defenses. Instead, the inquiry is whether these are colorable defenses. The undersigned finds that the record evidence reflecting that in administering the disability plan for AAFES, Aetna was acting as an agent for the government and is entitled to indemnification is sufficient to raise a colorable defense under sovereign immunity and the government contractor defense. See Jacks v. Meridian Resource Co., 2012 U.S. App. LEXIS 25652 (8th

specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." Boyle v. United Technologies Corp., 487 U.S. 500, 512, 108 S.Ct. 2510, 2518, 101 L.Ed.2d 442 (1988).

Cir. December 17, 2012) ("The lack of precedent regarding the availability of the Boyle defense to non-military service contractors does not defeat the plausibility of the defense.")(citation omitted).   Accordingly, the undersigned finds that Aetna has satisfied the elements required for removal of this action to federal court under 28 U.S.C. §§ 1441 and 1442(a)(1).   Thus, Plaintiff's Motion to Remand should be **DENIED**.

### B.  <u>MOTION TO DISMISS</u>

In its Motion to Dismiss (Doc. 5), Aetna argues that no contract exists between Plaintiff and Aetna; thus, Plaintiff's breach of contract claim should be dismissed for failure to state a claim.   In support of this contention, Aetna notes that its administrative agreement with AAFES outlines Aetna's relationship with AAFES as one in which Aetna provides "administrative services" in administering funds under the Plan. (Doc. 21 at 2).   According to Aetna, its role in administering funds from the Trust, over which AAFES retains final decision-making authority regarding claims for disability benefits, raises no contractual obligation for Aetna to pay benefits under the Plan; thus, Aetna cannot be held liable for benefits allegedly owed to Plaintiff. (Id.).

Aetna also argues that Plaintiff has likewise failed to

state a claim with respect to his bad faith refusal to pay insurance in violation of Alabama Code § 27-12-24 claim. Aetna contends that bad faith requires the breach of an insurance contract by a party to the contract, and in this case, the absence of an insurance contract between Plaintiff and Aetna is undisputed. (Docs. 5, 18, 21).

In opposition, Plaintiff contends that Aetna's motion should be denied because "it is reasonable that Plaintiff had an expectation of a contract to be able to enforce his employment benefits." (Doc. 19 at 4). Plaintiff also references the Performance Guarantees outlined in the administrative agreement between Aetna and AAFES as a basis for maintaining his breach of contract claim. (Doc. 19 at 5-6). Plaintiff avers that the performance objectives as outlined in the ASC require Aetna to "guarantee" his claim for the first year; however, his benefits were terminated after only eleven months in violation of the Performance Guarantees." (Id.).

### 1.   Legal Standard for Rule 12(b)

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts the non-moving party's factual allegations as true. Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). Moreover, the rules of pleading require only that a complaint

contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   In Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009), the Supreme Court explained that while a complaint attacked by a Rule 12(b)(6) motion need not contain detailed factual allegations in order to withstand attack, the complaint must however contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id.   A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.   The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss. Id.   The well-pled allegations must nudge the claim "across the line from conceivable to plausible." Bell Atl. Corp. V. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007).

Typically, a court reviewing a motion to dismiss under rule 12(b)(6) is limited to the four corners of the complaint. See Bickley v. Caremark RX, Inc., 461 F.3d 1325, 1329 n. 7 (11th Cir. 2006).  If, however, the complaint refers to documents that are central to the case, those documents may be considered part of the pleadings. See Jordan v. Miami-Dade County, 439 F.Supp.2d 1237, 1240 (S.D. Fla. 2006).  Similarly, courts may consider any

document attached to a motion to dismiss without treating the motion as one for summary judgment so long as the plaintiff has referred to the document in its complaint, the document is "central" to the claims and the authenticity of the document is unchallenged. See Bickley, 461 F.3d at 1329 n. 7; Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing Harris v. Ivax Corp., 182 F.3d 799, 802 n. 2 (11th Cir. 1999)). In analyzing Plaintiff's Complaint and Aetna's Motion to Dismiss, the Court has considered both Plaintiff's Complaint and the Administrative Agreement between Aetna and AAFES (Doc. 1-1), as the contract is "central" to the claims raised in Plaintiff's Complaint, Plaintiff references the contract in his filings, and its authenticity has not been challenged. See Id.

### 2. Count One: Breach of Contract.

As noted supra, Plaintiff contends that termination of his disability benefits violated the Performance Guarantees outlined in the appendix to the AAFES/Aetna administrative agreement; however, the evidence is undisputed that Plaintiff was not a party to the contract between AAFES and Aetna. However, under appropriate circumstances, third-party beneficiaries do indeed have standing to litigate contracts. See, e.g., Brunswick Cellulose, Inc. v. Rogers Cartage Co., 364 Fed. Appx. 592, 2010 U.S. Appx. LEXIS 2605 (11th Cir. February 8, 2010) ("A third

party beneficiary may enforce a contract if its terms indicate that the contract was intended for his or her benefit."). "The question of whether, for standing purposes, a non-party to a contract has a legally enforceable right is a matter of state law." AT&T Mobility, LLC v. National Ass'n for Stock Car Auto Racing, Inc., 494 F.3d 1356, 1360 (11th Cir. 2007). "Alabama law is clear to the effect that one for whose benefit a valid contract has been made, although that person is not a party thereto and does not furnish any consideration therefore, may maintain an action on the contract against the promissor." Vesta Fire Ins. Corp. v. Milam & Co. Const., Inc., 901 So.2d 84, 103 (Ala. 2004) (citation omitted.)

"In order for a person to be a third-party beneficiary of a contract, the contracting parties must have intended to bestow benefits on third parties." Edwards v. Costner, 979 So.2d 757, 763 (Ala. 2007)(citation omitted); H.R.H. Metals, Inc. v. Miller ex rel. Miller, 833 So.2d 18, 24 (Ala. 2002) (recognizing that "third-party-beneficiary principles focus upon the intent of the contracting parties" and specifically whether the contracting parties intended, at the time of contract formation, to bestow a direct benefit upon the complainant) (citations omitted).

Although Plaintiff's Complaint in this case is not the model of clarity, and does not include language which references Plaintiff as a "third party beneficiary" of the contract with

Aetna and AAFES, it appears that Plaintiff is contending that after initially paying his disability benefits, Aetna improperly denied his claim for disability benefits, and in doing so, Aetna breached the administrative contract with AAFES, and he can sue for the breach because he was a beneficiary under the contract. Indeed, there is language in the administrative contract that indicates that the contract was designed to facilitate the administration of AFFES's disability plan for its employees. (Doc. 1-1). Accordingly, the undersigned finds that the facts, although inartfully alleged by Plaintiff, are sufficient to state a cause of action for a third party beneficiary breach of contract against Aetna. Thus, Aetna's Motion to Dismiss Plaintiff's breach of contract claim should be **DENIED**. See Jones v. General Ins. Company of America, 2009 U.S. Dist. LEXIS 45014 (May 29, 2009)("The Court concludes that [plaintiff] was a third-party beneficiary of the Policy because the Policy language and surrounding circumstances clearly demonstrate an intent by the mortgagee and insurer to confer a direct benefit on her. As a third-party beneficiary, [plaintiff] has standing to pursue her claims against GICA in this action.)

### 3. Count Two: Bad Faith Refusal to Pay Insurance Claim in Violation of Alabama Code § 27-12-24.

Alabama law generally confines bad faith claims to situations where there is an insurance contract between the

parties. See Stewart v. State Farm Ins. Co., 454 So.2d 513, 514 (Ala. 1984) (Under Alabama law, "the tort of bad faith refusal to pay is that refusal to pay valid claims made by the insured of his insurance carrier"); Preis v. Lexington Ins. Co., 508 F. Supp.2d 1061, 1077 (S.D. Ala. 2007) (explaining that, for both ordinary and extraordinary bad faith claims, Alabama law requires plaintiff to show, inter alia, "the existence of an insurance contract between the parties"). Indeed, the Alabama Supreme Court has emphasized that "'a party cannot bring an action against an insurance company for bad-faith failure to pay an insurance claim if the party does not have a direct contractual relationship with the insurance company.'" Jones v. General Ins. Co. of Am., 2009 U.S. Dist. LEXIS 45014 (S.D. Ala. May 29, 2009) (citing Stewart v. State Farm Ins. Co., 454 So. 2d 513, 514 (Ala. 1984)). In Peninsular Life ins. Co. v. Blackmon, 476 So.2d 87, 89 (Ala. 1985), observed that:

> The tort of bad faith refusal to pay a claim has heretofore been applied **_only in those situations where a typical insurer/insured relationship existed_**; that is, where the insured or his employer entered into a written contract of insurance with an insurer and premiums were paid into a central fund out of which claims were to be paid. **_We are very hesitant to expand the tort beyond these narrow circumstances._**

Id. (emphasis added).

In this case, the undisputed evidence establishes that AAFES offers employees disability insurance coverage through a

self-insured plan, the benefits of which are paid out of AAFES funds. (Doc. 14-1 at 2). Aetna, through its administrative contract with AAFES, serves as the claims administrator for the plan, and provides claims processing functions. (Doc. 1-1). Aetna's contract with AAFES is a service contract for the administration of the disability plan as opposed to a contract for insurance. Accordingly, in the absence of an insurance contract with Aetna, Plaintiff cannot make out a bad faith claim under Alabama Code § 27-12-24. Accordingly, Aetna's Motion to Dismiss Plaintiff's bad faith claim should be **GRANTED**.

## III. <u>CONCLUSION</u>

Based upon a careful review of Plaintiff's motion, supporting briefs, and the briefs in opposition, the undersigned RECOMMENDS that Plaintiff's Motion to Remand be **DENIED**, and that Defendant's Motion to Dismiss be **DENIED** with respect Plaintiff's breach of contract claim, and **GRANTED** with respect to Plaintiff's bad faith claim.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this **29th** day of **January, 2013.**

**/s/ Sonja F. Bivins**
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.  **Objection**.  Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[10] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated

---

[10] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed. R. Civ. P. 72(b)(2).

> into the brief in support of the objection.
> Failure to submit a brief in support of the
> objection may be deemed an abandonment of
> the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Opposing party's response to the objection.** Any opposing party may submit a brief opposing the objection within fourteen (14) days of being served with a copy of the statement of objection. Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3. **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.